UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | **Jointly Administered under BKY 08-45257** |
| Petters Company, Inc., et al, | BKY 08-45257 |
| Debtors. | |
| (includes | Court File Nos.: |
| Petters Group Worldwide, LLC; | 08-45258 |
| PC Funding, LLC; | 08-45326 |
| Thousand Lakes, LLC; | 08-45327 |
| SPF Funding, LLC; | 08-45328 |
| PL Ltd., Inc.; | 08-45329 |
| Edge One LLC; | 08-45330 |
| MGC Finance, Inc.; | 08-45331 |
| PAC Funding, LLC; | 08-45371 |
| Palm Beach Finance Holdings, Inc.) | 08-45392 |
| | Chapter 11 Cases |
| _____ | Judge Kathleen H. Sanberg |
| Douglas A. Kelley, in his capacity as the PCI Liquidating Trustee for the PCI Liquidating Trust, | ADV 10-04439 |
| Plaintiff, | |
| v. | |
| Home Federal Savings Bank, | |
| Defendant. | |

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

At Minneapolis, Minnesota, June 26, 2019.

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *06/26/2019*
Lori Vosejpka, Clerk, by LH

1

On March 4, 2019, the Court heard oral argument on Plaintiff's Partial Motion for Summary Judgment. Eric Lopez Schnabel and J. David Jackson appeared for Plaintiff. Kevin Hofman appeared for Defendant. On March 11, 2019, the Court ordered supplemental briefing.[1] Responses were filed and the motion was submitted for decision on April 1, 2019.

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 1334, Fed. R. Bankr. P. 7001, and Local Rule 1070–1. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(H). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## Introduction

This adversary proceeding arises out of the Petters' Ponzi scheme orchestrated by Thomas J. Petters ("Petters") and his associates. On October 10, 2010, Liquidating Trustee Douglas A. Kelley ("Plaintiff") filed suit against Home Federal Savings Bank ("Defendant") seeking to avoid and recover three transfers made from Petters Company, Inc. ("PCI") to Defendant totaling $266,250.00 (the "Transfers").

Plaintiff moves for partial summary judgment on claims for constructive fraud under the Minnesota Uniform Fraudulent Transfers Act ("MUFTA") and the Bankruptcy Code.[2] Plaintiff alleges the Transfers were made for lack of reasonably equivalent value while PCI was insolvent. Defendant opposes Plaintiff's motion, arguing that genuine issues of material fact preclude summary judgment.

For the reasons discussed below, Plaintiff's motion is granted because there are no material facts in dispute and Plaintiff is entitled to judgment as a matter of law.

---

[1] Dkt. 111.
[2] Counts IV and VI through VIII of the Second Amended Complaint. Dkt. 93.

## Background and Procedural History

### I. Petters' Ponzi Scheme

Briefly, between 1994 and 2008, Petters and his associates orchestrated a Ponzi scheme through PCI and its affiliates.[3] Over many years, Petters and his associates falsely represented that PCI was in the business of diverting consumer electronic goods to big-box retailers in order to induce loans to finance fictitious purchase order transactions.[4] In exchange for the loans, PCI and its affiliates issued promissory notes secured by the consumer goods supposedly being purchased.[5] Instead of using loan proceeds to purchase consumer goods for sale to retailers, the proceeds were used to pay other investors, to pay those assisting with the Ponzi scheme, and to pay for Petters' extravagant lifestyle.[6] By the time the fraud was uncovered and the scheme ended in 2008, PCI had entered into nearly 4,000 promissory notes with at least 153 private investors, in a total amount exceeding $2 billion dollars.[7]

### II. The Vlahos Loans

In January 2008, Petters asked Dean P. Vlahos ("Vlahos"), one of Petters' longstanding private investors, for a loan.[8] In order to make the loan to Petters, Vlahos borrowed $6 million dollars from Defendant.[9] Vlahos entered into a promissory note with Defendant for $6 million dollars evidencing his obligation to repay Defendant on the loan (the "Vlahos Note").[10] As

---

[3] The Honorable Judge Susan R. Nelson of the United States District Court for the District of Minnesota recently provided a detailed background of the Ponzi scheme in *Kelley v. Kanios*, Case No. 18-cv-823 (SRN/SER), 2019 WL 2193163 (D. Minn. May 20, 2019).
[4] *See generally United States v. Petters*, 663 F.3d 375 (8th Cir. 2011).
[5] Pl.'s Mem., Dkt. 101, Ex. 1 at 546:21–549:1.
[6] Pl.'s Mem., Dkt. 101, Ex. 2 at 105:18–25, Ex. 3 at 722:25–726:7, 748:13–15, Ex. 4 at 39:21–40:5, 84:21–85:10, Ex. 5 at 3217:24–3218:2.
[7] Pl.'s Mem., Dkt. 101, Ex. 6 at ¶ 9.
[8] Vlahos Decl., Dkt. 105 at ¶ 3.
[9] Dkt. 93 at ¶ 33 (Second Am. Compl.); Dkt. 98 at ¶ 33 (Answer); Vlahos Decl., Dkt. 105 at ¶ 4.
[10] Dkt. 93 at ¶ 35; Dkt. 98 at ¶ 35; Pl.'s Mem., Dkt. 101, Ex. 8 at ¶ 44.

additional security, Vlahos pledged to Defendant shares of uBid.com Holdings, Inc., that Petters Group Worldwide ("PGW") had earlier pledged to him.[11]

On January 28, 2008, Vlahos received a note from PGW due and payable on August 28, 2008 (later extended to October 27, 2008 ) (the "PGW Note") in exchange for the loan of $6,000,000.[12] Vlahos also received a personal guaranty from Petters and a Pledge Agreement dated January 2, 2008 ("Pledge Agreement").[13] At PGW's request, the funds were transferred from Vlahos's bank account with Defendant to an account belonging to PCI.[14]

### III. The Interest Payments

PCI made three cash payments to Defendant: $113,750 on May 8, 2008 and $113,750 on August 1, 2008 for interest due on the Vlahos Note for the months of April and July 2008.[15] On September 2, 2008, PCI transferred to Defendant $38,750 for prorated interest due on the Vlahos Note.[16] Defendant does not contest that it received the Transfers.[17]

### IV. Receivership Order and Second Amended Plan of Liquidation

On October 6, 2008, Judge Ann Montgomery of the United States District Court for the District of Minnesota appointed Plaintiff, Douglas Kelley, as the equity receiver for PCI and its affiliates (the "Receivership Order").[18] On October 11, 2008, Plaintiff, through his authority as receiver, filed for Chapter 11 relief on behalf of PCI.[19] He was then appointed as the Chapter 11 Trustee. This adversary proceeding was one of over 300 filed.

---

[11] *Id*.
[12] Dkt. 93 at ¶ 34; Dkt. 98 at ¶ 34; Pl.'s Mem., Dkt. 101, Ex. 8 at ¶ 44 & Ex. D; Vlahos Decl., Dkt. 105 at ¶¶ 4–5.
[13] *Id*.
[14] Dkt. 93 at ¶ 36; Dkt. 98 at ¶ 36; Pl.'s Mem., Dkt. 101, Ex. 8 at ¶ 44 & Ex. W.
[15] Pl.'s Mem., Dkt. 101, Ex. 8 at ¶¶ 45–46 & Ex. X; Vlahos Decl., Dkt. 105 at ¶¶ 8–9.
[16] *Id*. This prorated interest became due when the Vlahos and PGW Notes were extended in August 2008.
[17] Def.'s Resp., Dkt. 105 at 3–4. It is undisputed that PCI received the proceeds of the PGW Note. Pl.'s Mem., Dkt. 101, Ex. 8 at ¶¶ 43, 45, 58. It is also undisputed that none of the funds loaned by Vlahos, including proceeds of the loan under the PGW Note, were used to acquire consumer goods to sell to big-box retailers. *Id*. at ¶ 43.
[18] *See generally In re Petters Co., Inc.*, No. 08-45257 (Bankr. D. Minn.).
[19] *Id*.

The Court turns to the instant summary judgment motion.

## Standard of Review

Federal Rule of Civil Procedure 56, made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[20]  "[M]ere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment."[21]  Once the movant has made its showing, the burden shifts to the non-moving party, who must establish that there are specific and genuine issues of material fact warranting a trial.[22]  In ruling on a motion for summary judgment, courts "view the record in the light most favorable to the nonmoving party and afford that party all reasonable inferences."[23]

## Discussion

Plaintiff moves for partial summary judgment on its claims for constructive fraud under the Bankruptcy Code and MUFTA.  Minnesota law provides the substantive basis for Plaintiff's claims while the Bankruptcy Code provides the federal procedural mechanism for Plaintiff to invoke MUFTA.

Under Minnesota law, a claim for constructive fraud does not require a showing of intent, unlike actual fraud.[24]  A constructive fraud claim can be established when a party shows that the debtor made transfers without receiving reasonably equivalent value and that the debtor was

---

[20] Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056.
[21] *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007).
[22] *Celotex Corp. v. Catrett*, 477 U.S. 316, 324 (1986).
[23] *In re Patch*, 526 F.3d 1176, 1180 (8th Cir. 2008).
[24] Minn. Stat. § 513.44(a)(2); *Finn v. Alliance Bank*, 806 N.W.2d 638, 645 (Minn. 2015).

5

insolvent or became insolvent due to the transfers.[25]  Those transfers may be avoided under MUFTA.[26]

The Bankruptcy Code authorizes Plaintiff to avoid transfers made by PCI prior to the petition date to the extent such transfers are fraudulent within the meaning of state fraudulent transfers law—here, MUFTA.[27]  In addition, Plaintiff may avoid transfers made within two years before the petition date if PCI received less than reasonably equivalent value and was insolvent.[28]  Finally, Plaintiff may recover property transferred by PCI to the extent such transfers are avoided under Section 548 of the Bankruptcy Code.[29]  Thus, Plaintiff is authorized to avoid the Transfers if they are fraudulent under MUFTA or the Bankruptcy Code.

## I.    Reasonably Equivalent Value

In the motion, Plaintiff argues that PCI did not receive reasonably equivalent value—and in fact received no value—in exchange for the Transfers.  PCI and Defendant were not in privity and PCI was not a party to either the Vlahos Note or the PGW Note.  PCI made the interest payments owed by Vlahos on the Vlahos Notes to Defendant.

Defendant admits that PCI received no direct consideration from Defendant for the Transfers.[30]  Instead, Defendant argues that the Transfers either reduced PCI's debt to Vlahos or PGW, so a question of fact exists about whether PCI received an indirect benefit sufficient to show reasonably equivalent value.  At oral argument, Defendant admitted that there is no debt

---

[25] Minn. Stat. § 513.45; *Kelley v. Associated Bank* (*In re Petters Co.*), 548 B.R. 551, 565 (Bankr. D. Minn. 2016) (citing *Finn*, 860 N.W.2d at 645). Additionally, MUFTA deems transfers fraudulent if made by a debtor for lack of reasonably equivalent value and if the debtor intended to incur, or believed (or reasonably should have believed) that the debtor would incur, debts beyond the debtor's ability to pay as they come due.  Minn. Stat. § 513.44(a)(2)(i).
[26] Minn. Stat. § 513.47.
[27] 11 U.S.C. § 544(b).
[28] 11 U.S.C. § 548(a)(1)(B).
[29] 11 U.S.C. § 550(a).
[30] Def.'s Resp., Dkt. 105 at 7.

6

instrument or other documentation evidencing a debt between PCI and PGW or between PCI and Vlahos that could have been reduced by the Transfers.[31]

Payment made in satisfaction of an antecedent debt can constitute reasonably equivalent value under MUFTA. But payments made solely for the benefit of a third party, such as a payment to satisfy a third party's debt, do not provide reasonably equivalent value to a debtor.[32] In cases where the immediate benefit from a transfer is indirect and identifiable to a non-debtor third party, the burden "shifts to the transferee to show that the debtor received a cognizable indirect benefit."[33] Any such indirect benefit received by a debtor must have been tangible and of concrete economic value.[34]

Because PCI received no direct benefit from Defendant in exchange for the Transfers, the Court must determine if PCI received a cognizable indirect benefit for the Transfers.

Defendant argues that the relationships between PCI, PGW, and Vlahos present "the distinct possibility that PCI received an economic benefit when PCI made payments to Home Federal." [35]

First, Defendant asserts that PCI received reasonably equivalent value when it made the Transfers to Defendant for Vlahos's benefit because it received a reduction of its debt to Vlahos. The only evidence in support of Defendant's position is the Declaration of Dean P. Vlahos (the "Vlahos Declaration"). The Vlahos Declaration asserts that when PCI made the Transfers, Vlahos then credited PCI by reducing what PCI owed him for the funds he had wired.[36]

---

[31] Dkt. 108 at 34:2–6, 35:13, 42:6–11 (Mar. 4, 2019).
[32] *Leonard v. Mountainwest Fin. Corp.* (*In re Whaley*), 229 B.R. 767, 775 (Bankr. D. Minn. 1999) (citing *In re Bargfrede*, 117 F.3d 1078, 1080 (8th Cir. 1997)).
[33] *Id.*
[34] *Id.*
[35] Def.'s Resp., Dkt. 105 at 7 ("[T]he Trustee has done nothing more than show that PCI received no consideration directly from Home Federal.").
[36] Vlahos Decl., Dkt. 105 at ¶¶ 8–9.

Regardless of what Vlahos said he did, the evidence is to the contrary. It was PGW that directed the loan proceeds to be wired directly to PCI from Vlahos's bank account with Defendant.[37] The fact that the funds were wired to an account held by PCI does not change the legal relationship between PGW and Vlahos. The only debt instruments and documentation are with PGW—not PCI.[38] The Vlahos Declaration admits that his loan was to PGW.[39] PGW, not PCI, provided the security for the PGW Note.[40] When the parties amended the PGW Note, the amendment was between PGW and Vlahos and involved the same collateral and personal guaranty.[41]

Further, Vlahos's Chapter 7 petition and schedules list a promissory note from PGW as personal property; they do not list any debt obligation of PCI to Vlahos.[42] PGW's bankruptcy schedules list Vlahos as a secured creditor and provide a description matching the PGW Note.[43] Vlahos's "belief" that PCI had an obligation to him is contradicted by all available evidence. There is simply no evidence that PCI owed a debt to Vlahos that could have been reduced by making the Transfers to Defendant.

Defendant's next argument is that PCI received an indirect benefit because the Transfers reduced Vlahos's obligation to Defendant, which reduced PGW's obligation to Vlahos, which then reduced a receivable that PCI owed to PGW. In support of its position, Defendant cites a schedule titled "Interest Receivable due from Petters Company Inc." attached to PGW's proof of claim against PCI (the "PGW Schedule").[44] A line item dated June 1, 2008 bears the description

---

[37] *Id.* at ¶ 7.
[38] Dkt. 108 at 34:2–6, 35:13 (Mar. 4, 2019).
[39] Vlahos Decl., Dkt. 105 at ¶¶ 4–5, 7 ("On the loan by me to PGW . . . .").
[40] *See supra* notes 12–13.
[41] Vlahos Decl., Dkt. 105 at ¶¶ 10–12.
[42] Dkt. 117, Ex. D. Although Schedule F lists PCI twice, it is for "notice only" purposes and PCI is not listed as a creditor. *Id.*
[43] Dkt. 117, Ex. B.
[44] Dkt. 117, Ex. G at 4.

"*PCI Payment to D Vlahos" in the amount of "(113,750.00)."[45]  Defendant claims the line item corresponds to PCI's May 8, 2008 interest payment to Defendant.  But the June 1 line item, and the PGW Schedule in general, never reference Defendant and only shows a transfer to Vlahos.[46]  Further, the PGW Schedule dates do not match the dates of the Transfers.[47]  Defendant argues that a second reduction credited on August 1 corresponds to the August 1, 2008 interest payments.[48]  But the "apply date" for this line item is April 30, 2009 and the amount paid does not correspond to the Transfers.[49]

Defendant attributes the PGW Schedule's omissions of the Transfers to incomplete and sloppy recordkeeping while at the same time relying on the PGW Schedule to support its argument that PCI received an indirect benefit for the Transfers.  Defendant provides no other evidence that PCI received an indirect benefit from PGW for the Transfers.

Defendant admits there are no debt instruments or other documents evidencing a debt between PCI and PGW that could have been reduced by the Transfers.[50]  Moreover, PGW's former controller testified at PCI's confirmation hearing that the $6 million dollars PGW borrowed from Vlahos was used to pay off accrued interest that PGW owed to PCI on a running loan balance.[51]  The PGW Schedule is insufficient to show the type of tangible and concrete indirect benefit required for reasonably equivalent value.

In response to the Court's order for supplemental briefing[52] as to language in the Plan referencing the Vlahos transactions in this adversary proceeding, Defendant argues that PCI and

---

[45] *Id*.
[46] *See generally* Dkt. 117, Ex. G.
[47] *Id*. The dates of the Transfers are May 8, August 1, and September 2, 2008.
[48] *Id*. at 4.
[49] *Id*. The amount paid is $178,208.33.
[50] *Supra* note 31.
[51] Dkt. 117, Ex. L at 202:25–203:2.
[52] Dkt. 111. The supplemental briefing was requested because the Plan had language regarding substantive consolidation. *See infra* note 54.

PGW were operationally one entity (alter egos) and, as such, the benefit to PGW from the Transfers is also a benefit to PCI.  At oral argument, Defendant admitted that PCI and PGW are separate entities and should be held separately accountable.[53]  The supplemental brief is the first time Defendant asserts that the Court should ignore PCI's and PGW's corporate separateness. Because the Court's order for supplemental briefing did not invite new legal arguments and, given Defendant's now inconsistent legal positions, the Court declines to entertain Defendant's alter-ego and horizontal veil piercing arguments.[54]

Finally, because the immediate benefit from a transfer is indirect and identifiable to a third party, the burden to show PCI received a cognizable indirect benefit shifts to Defendant. Defendant has failed to show the tangible and concrete benefit required for reasonably equivalent value and has, therefore, failed to meet its burden.

In conclusion, PCI did not receive any direct nor indirect benefit for the Transfers.  Thus, PCI did not receive reasonably equivalent value for the Transfers to Defendant.

## II.  Solvency

Plaintiff argues there are no genuine issues of material fact that PCI was insolvent at the time of the Transfers.  Plaintiff's expert forensic accountant, Theodore Martens, concluded after an exhaustive investigation that PCI was insolvent no later than December 31, 1996 and remained so until the Petters' Ponzi scheme collapsed in 2008.[55]  Throughout the duration of the Ponzi scheme, Martens found that PCI's liabilities exceeded its assets ranging from at least $6.5

---

[53] Dkt. 108 at 42:18–22 (Mar. 4, 2019) ("We're not saying that this is a situation where the defendant tried to say, well, they're one and the same entity.  Home Federal's never taken that position that they're alter egos.").

[54] The Plan substantively consolidated the PGW Estate with the previously substantively consolidated PCI Estate solely for administrative purposes.  The Plan did not affect or constitute a waiver of the mutuality requirement for setoff under Section 553 of the Bankruptcy Code. All claims and causes of action belonging to the Chapter 11 Trustee to avoid transfers of property of any of the Debtors, including this adversary proceeding, were preserved and unaltered by the Plan.  *In re Petters Co., Inc.*, No. 08-45257, Dkt. 3305 at ¶¶ 6.1–6.2, 7.

[55] Pl.'s Mem., Dkt. 101, Ex. 7 at ¶ 9, Ex. 8 at ¶ 47.

million dollars at the end of 1996 to as much as $3.25 billion dollars by June 2008.[56] Defendant does not present any evidence to the contrary, but argues that there is no evidence of insolvency for the particular date of each Transfer. Thus, Defendant argues, Plaintiff can only presume insolvency. The Court disagrees.

Martens's conclusions in the solvency report are based on evidence produced from a thorough forensic accounting investigation.[57] His conclusions are not based on a Ponzi scheme presumption.[58] In light of Martens's solvency report, and in the absence of any evidence produced by Defendant to the contrary, the Court determines that PCI was insolvent at all relevant times.[59] Plaintiff has established insolvency as a matter of law.

Thus, Plaintiff has proven that the Transfers were not made for reasonably equivalent value and were made at a time when PCI was insolvent. Plaintiff has met his burden of proof on Counts IV, VI, VII, and VIII of the Second Amended Complaint and is entitled to partial summary judgment.

## III. Prejudgment Interest

Plaintiff asserts that he is entitled to prejudgment interest at Minnesota's statutory 10% per annum prejudgment interest rate calculated from January 11, 2017, which is the date of Plaintiff's settlement demand made at the parties' mediation conference.[60] In a different Petters' adversary proceeding, this Court recognized the lack of binding Eighth Circuit authority on whether federal or state law governs an award of prejudgment interest in a case involving

---

[56] Pl.'s Mem., Dkt. 101, Ex. 7 at ¶¶ 17, 20.
[57] *See Kelley v. Kanios*, 2019 WL 2193163, at *5, *13 n.16.
[58] The Court acknowledges that under Minnesota law, insolvency cannot be presumed merely by the existence of a Ponzi scheme. *Finn*, 860 N.W.2d at 648–49.
[59] *See generally Kelley v. Kanios*, 2019 WL 2193163, at *5, *13 n.16.
[60] Minn. Stat. § 549.09.

overlapping federal and state law claims.[61]  Under federal or state law, an award of prejudgment interest rests in the court's discretion.[62]  Courts routinely award prejudgment interest whenever damages lawfully due are withheld so as to compensate the prevailing party for the true costs of money damages incurred, promote settlement, and to avoid a defendant's unjust enrichment.[63]

Defendant does not address the issue of prejudgment interest.

The Court agrees with Plaintiff that Minnesota law governs the prejudgment interest rate for this adversary proceeding.  Here, MUFTA provides the substantive basis for Plaintiff's requested relief on his constructive fraud claims whereas the Bankruptcy Code provides the federal procedural mechanism for Plaintiff to invoke Minnesota law.  The District of Minnesota reached the same conclusion in two recent Petters' clawback proceedings.[64]

Minnesota law provides for a 10% annual interest rate for all damage awards over $50,000, subject to limited exceptions inapplicable in this adversary proceeding.[65]  Prejudgment interest is calculated "from the time of the commencement of the action or . . . the time of a written notice of claim."[66]  Due to an intervening stay in this adversary proceeding, Plaintiff only seeks an award of prejudgment interest calculated from January 11, 2017, which is when Plaintiff made a settlement demand to Defendant at the mediation conference held pursuant to this Court's order.[67]

The Court finds that Plaintiff is entitled to an award of prejudgment interest from Defendant at the statutory rate of 10% per annum from January 11, 2017 until final judgment is

---

[61] *Kelley v. Boosalis*, Adv. No. 10-4247, Dkt. 49 at 7 (Bankr. D. Minn. Oct. 19, 2016).  This Court previously declined to decide whether federal or state law would govern an award of prejudgment interest because it remained unclear whether the Trustee would recover under Minnesota or federal law.  *Id*. at 10.
[62] *Kelley v. Boosalis*, No. 18-cv-868 (SRN/TNL), 2018 WL 6433161, at *2 (D. Minn. Dec. 7, 2018).
[63] *Kelley v. Kanios*, 2019 WL 2193163, at *23 (citing *Kelley v. Boosalis*, 2018 WL 6433161, at *2, *4).
[64] *Kelley v. Kanios*, 2019 WL 2193163, at *22–23; *Kelley v. Boosalis*, 2018 WL 6433161, at *3–4.
[65] Minn. Stat. § 549.09, subd. 1(c).
[66] *Id*., subd. 1(b).
[67] Dkt. 40.

entered.[68]  Defendant points to no exceptional circumstances justifying a different outcome and failed to address the issue of prejudgment interest in its briefing.  The amount of actual prejudgment interest will need to be determined at trial, as there is not yet a final judgment.

## Conclusion

For the reasons stated above, Plaintiff's motion is granted.  Plaintiff has shown as a matter of law that PCI did not receive reasonably equivalent value for the Transfers and that PCI made the Transfers while insolvent.

## Order

IT IS ORDERED:

1. Plaintiff's Motion for Partial Summary Judgment is GRANTED.

2. Judgment in favor of Plaintiff will be entered on

    Counts IV, VI, VII and VIII of the Second Amended Complaint.

3. Plaintiff shall confer with Defendant and schedule a Status Conference with the Court.

/e/ Kathleen H. Sanberg
KATHLEEN H. SANBERG
UNITED STATES BANKRUPTCY JUDGE

---

[68] *See Kelley v. Kanios*, 2019 WL 2193163, at *22–23; *Kelley v. Boosalis*, 2018 WL 6433161, at *3–4.